UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLYPORTABLES LLC, | No. 1:16-cv-01291-DAD-SKO |
| Plaintiff, | |
| v. | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| ENDUREQUEST CORP., KEN DEWING, and ROBERT DAVIS, | (Doc. No. 13) |
| Defendants. | |

This action concerns the alleged theft of trade secrets by defendants of plaintiff's proprietary information concerning a redesign of a portable handwashing sink product known as the "Tag Along." On September 16, 2016, plaintiff filed a motion for preliminary injunction, which was opposed by defendants on October 4, 2016. (Doc. Nos. 13, 26.) On October 18, 2016, the court held a hearing at which attorney Merri Baldwin appeared on behalf of plaintiff, and attorneys Christopher Dominguez, Barry Goldner, and Scott Kimsey appeared on behalf of defendants. Having considered the briefs and oral arguments presented by the parties and for the reasons explained below, plaintiff's motion for preliminary injunction will be denied.

**Factual Background**

Many of the facts in connection with the pending motion appear to be undisputed. Plaintiff is a Georgia-based company that sells portable restrooms, handwashing stations, and related products. Defendant Endurequest is a California-based entity that formerly had a business

1

relationship with plaintiff wherein it manufactured and warehoused products for plaintiff. Defendant Dewing is the president of Endurequest, and defendant Davis is a former employee of plaintiff and current employee of defendant Endurequest. Defendant Endurequest manufactured plaintiff's portable handwashing station, the Tag Along, and warehoused other products of plaintiff's for distribution. Throughout much of this relationship, until his resignation in 2016, defendant Davis served as the West Coast Division Sales Manager for plaintiff. Davis was one of five such sales managers covering different territories in the United States. He maintained an office at Endurequest's warehouse in Porterville, California, where defendant Dewing also worked.

Endurequest and plaintiff had at least two contractual agreements with plaintiff that generally governed the relationship between the companies, including a warehousing agreement from 2000 related to the warehousing of certain of plaintiff's products (the "2000 Warehouse Agreement") and a non-competition agreement from 2003. Endurequest first began manufacturing the Tag Along in 2002, and was plaintiff's sole manufacturer for the product. It used specially designed tools to manufacture the Tag Along, which was a profitable product for plaintiff. In 2008, defendant Davis purchased an ownership interest in Endurequest as a "silent investor." He received permission to do so from the then-president and owner of PolyPortables. Plaintiff was apparently acquired by new owners at some point after 2008, who learned of Davis' Endurequest ownership interest in late 2012, though they appear to have acquiesced in it thereafter.

During 2013 and 2014, the two companies discussed a possible redesign of the Tag Along handwashing sink. The parties disagree which entity proposed the redesign, led the redesigning process, and provided which insights or ideas for the product. During this process, the relationship between the companies began to deteriorate when plaintiff advised defendant Endurequest it planned to move one of the Tag Along molds to another manufacturer on the east coast. Endurequest, therefore, would no longer be the sole manufacturer of the product for plaintiff. Because this represented a substantial loss of business for the company, defendant Endurequest offered to sell itself to PolyPortables in 2015, an offer which was declined. In 2015,

due to the loss of the exclusive manufacturing arrangement, defendant Endurequest elected to develop its own competing portable handwashing station product, the Stowaway, and terminate its relationship with PolyPortables according to the 2000 Warehouse Agreement. In early 2016, defendant Davis both resigned from plaintiff and advised plaintiff of Endurequest's decision to tender a sixty-day notice of termination of the 2000 Warehouse Agreement. Defendant Endurequest continued to manufacture the Tag Along for plaintiff until May 2016 in order to ensure plaintiff had sufficient inventory of the product while it arranged for another manufacturer to acquire the molding and learn the manufacturing process.

Following the termination notice, in February 2016, representatives of plaintiff attended the Water & Wastewater Equipment, Treatment & Transport Show, an industry tradeshow in Indianapolis, Indiana. They saw a prototype of the Stowaway, manufactured by Endurequest, at the tradeshow. Plaintiff appears to have concluded at that time that the Stowaway was manufactured with its trade secrets. However, because there was only a prototype and no immediate indication Endurequest intended to manufacture and sell these units, plaintiff took no action. In June and July 2016, plaintiff learned that some of its customers had begun purchasing Stowaway models from Endurequest instead of the Tag Along, in part at least because of a disruption in the manufacture of the Tag Along which led to it being backordered. Additionally, during this time one of plaintiff's larger customers indicated it would, in the future, require both plaintiff and Endurequest to submit competing bids for the Tag Along and Stowaway, respectively, before it would purchase either. Plaintiff subsequently filed this action on August 31, 2016 and sought a temporary restraining order, which was denied without prejudice to the filing of a motion for preliminary injunction. (Doc. Nos. 1, 4, 5.)

**Legal Standard**

"The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *American Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has also framed the inquiry somewhat differently on occasion, noting "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)).[1] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Moreover, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Finally, in deciding whether to issue a preliminary injunction, a district court need not only consider credible and admissible evidence, and can rely on inadmissible evidence such as hearsay. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

The phrase "irreparable harm" is a term of art, meaning a party has suffered a wrong which cannot be adequately compensated by remedies available at law, such as monetary damages. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)[2]; *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("The basis of injunctive relief in the

---

[1] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

[2] The decision in *eBay* was not limited to the Patent Act context in which it was issued. Rather, the Supreme Court emphasized that its decision was based on "well-established principles of equity," from which "a major departure . . . should not lightly be implied." *eBay*, 547 U.S. at 391.

federal courts is irreparable harm and inadequacy of legal remedies. . . . [M]onetary injury is not normally considered irreparable."). This phrase is crucially important, since, "[a]t a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

In the wake of the Supreme Court's decision in *eBay*, the Ninth Circuit has held that a plaintiff seeking preliminary injunctive relief must demonstrate "irreparable injury is *likely* in the absence of an injunction." *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 22). Because irreparable harm must be demonstrated and not merely alleged, the granting of a preliminary injunction must be based on evidence showing irreparable harm. *See id.* at 1250 (reversing the district court's granting of preliminary injunctive relief in a trademark infringement suit because its "analysis of irreparable harm is cursory and conclusory, rather than being grounded in any evidence"). Importantly, the Ninth Circuit in *Herb Reed* noted there can no longer be a presumption of irreparable harm:

> The practical effect of the district court's conclusions, which included no factual findings, is to reinsert the now-rejected presumption of irreparable harm based solely on a strong case of trademark infringement. Gone are the days when once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.

*Id.* at 1250 (citations and quotations omitted); *see also Ferring Pharma., Inc. v. Watson Pharma., Inc.*, 765 F.3d 205, 216 (9th Cir. 2014); *Jumbo Bright Trading Ltd. v. Gap, Inc.*, No. CV 12-08932 DDP (MANx), 2012 WL 5289784, at *1 (C.D. Cal. Oct. 25, 2012). Further, the court observed that while "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm," the evidence must establish not only that such an injury is likely absent an injunction, but that "legal remedies, such as money damages, are inadequate in this case." *Herb Reed Enters. LLC*, 736 F.3d at 1250.

**Analysis**

Here, plaintiff initially asserted "irreparable harm is presumed." (Doc. No. 14 at 23.) This assertion is incorrect, in light of the decision in *Herb Reed*. The only thing plaintiff points to

5

in favor of demonstrating irreparable harm in its motion is that it had "already lost a significant sale to one of its largest customers." (Doc. No. 14 at 24.) In support of this assertion, plaintiff cites to a declaration from Jeff Thomas, its president, who declared that he learned an order for 120 units from United Sites Services ("USS") had been put on hold while USS obtained a competing quote from defendant. (Doc. No. 15 at ¶ 32.) Thomas also stated in his declaration that USS would now require competing quotes from PolyPortables and Endurequest for all future orders of its hand wash stations. (*Id*.) In its reply brief, plaintiff contends it has demonstrated irreparable harm because of evidence of "threatened loss of prospective customers." (Doc. No. 28 at 12.) However, the only evidence cited by plaintiff in this regard is a declaration from its Vice President of Sales, Eric Capers, in which Mr. Capers states that he was informed by a USS representative that USS would now be asking PolyPortables and Endurequest to provide competing quotes for future sales of hand wash stations and that he subsequently learned that USS had elected to purchase 120 units of defendant's product, instead of plaintiff's. (Doc. No. 28 at 12) (citing Doc. No. 17 at ¶ 16.).

At oral argument on the pending motion, plaintiff's counsel directed the court to the declaration of Henry Davis, plaintiff's director of operations, as evidence of irreparable harm. In his declaration Mr. Davis states that he had lengthy discussion with defendants Dewing and Davis about the redesign for the Tag Along, and provided them with proprietary information to aid the process that they would not otherwise have been able to obtain. (Doc. No. 16 at ¶¶ 7, 8, 10–12.) Further, Davis asserts defendants have included design features into the Stowaway based on this proprietary information belonging to plaintiff. (Doc. No. 16 at ¶¶ 15–17.) Plaintiff's counsel also directed the court to the declaration of plaintiff's President, Jeff Thomas. In that declaration Mr. Thomas notes: "[i]n 2015, USS purchased 15 percent of all Tag Along units sold by PolyPortables. Losing USS as a client for the Tag Along would cause a substantial financial injury to PolyPortables." (Doc. No. 15 at ¶ 34.)

The evidence presented by plaintiff in support of the pending motion has not established irreparable injury. At best, plaintiff has presented some evidence that it has lost some sales to defendant, allegedly because of its theft of trade secrets. If proven, this is precisely the type of

loss compensable by money damages, and it is therefore not irreparable.  *See Herb Reed Enters., LLC*, 736 F.3d at 1250.  Plaintiff has presented some evidence it will now be compelled to submit bids for sales of its products to one customer.  (Doc. No. 28 at 12.)  However, plaintiff has failed to demonstrate how being required to submit such bids will result in it suffering irreparable injury during the pendency of these proceedings.  Nor is the potential loss of USS as a client irreparable.  Although plaintiff has stated that such a loss would result in "substantial financial injury," it has not presented any evidence that such a loss, for instance, would threaten the existence of plaintiff or result in fundamental changes to its ability to continue in business.  The lack of such evidence strongly suggests that the threatened loss is primarily financial.  While financial injury alone is certainly significant, it is not generally irreparable.  Because the financial injuries plaintiff alleges can be remedied with a provable damage judgment at the conclusion of this litigation, a preliminary injunction should not issue.

      Plaintiff cites four cases in support of its argument that it has demonstrated irreparable injury here:  *QBAS Co., Ltd. v. C. Walters Intercoastal Corp.*, No. SACV 10-406 AG (MLGx), 2010 WL 7785955 (C.D. Cal. Dec. 16, 2010); *Super-Krete International, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1037 (C.D. Cal. 2010); *China Central Television v. Create New Technology (HK) Ltd.*, No. CV 15-01869 MMM (MRWx), 2015 WL 3649187, at *13 (C.D. Cal. June 11, 2015); and *Sennheiser Electronic Corp. v. Eichler*, No. CV 12-10809 MMM(PLAx), 2013 WL 3811775, at *10 (C.D. Cal. July 12, 2013).  Three of these decisions, *QBAS Co.*, *Super-Krete* and *Sennheiser*, were issued without the guidance of the Ninth Circuit's decision in *Herb Reed*.  Moreover, two of those decisions reflect the presumption of irreparable harm which the Ninth Circuit affirmatively discounted in *Herb Reed*.  *See Sennheiser*, 2013 WL 3811775 at *10 (citing a presumption of irreparable injury, identifying no evidence establishing such injury, and apparently relying only on plaintiff's allegations of irreparable injury); *Super-Krete Int'l, Inc.*, 712 F. Supp. at 1036–37 (noting "[i]n a trademark infringement case, irreparable injury is ordinarily presumed upon a showing of a likelihood of success") (quotations omitted).  In the third, the court found plaintiffs had "provided sufficient evidence to show that their losses are . . . likely nonrecoverable after a trial."  *QBAS Co., Ltd.*, 2010 WL 7785955 at *13.  In the only

decision issued following that of the Ninth Circuit in *Herb Reed*, the court noted it could not presume irreparable injury, but also made extensive findings of fact based upon the evidence submitted in support of the motion for injunctive relief, including specific findings that defendants' "infringement has also damaged plaintiffs' goodwill." *China Cent. Television*, 2015 WL 3649187, at *12.

The court concludes that plaintiff has failed to demonstrate a likelihood of irreparable injury if a preliminary injunction is not issued. In light of this conclusion, the court declines to reach the parties' arguments with respect to plaintiff's likelihood of success on the merits.

**Conclusion**

For the reasons explained above, plaintiff's motion for preliminary injunction (Doc. No. 13) is denied.

IT IS SO ORDERED.

Dated: **October 28, 2016**

UNITED STATES DISTRICT JUDGE